it will be seen that vessels outward bound through the sound, not yet having reached the sound, are also intended to be included within its scope.

The latter part of the seventh section provides for the liability of vessels under 100 tons burden, and then describes them as "vessels navigating the said channel to and from the port of New York." It is clearly to be seen, however, that the object of the section is to provide for two classes of vessels, namely, those over and those under 100 tons burden, without any design of providing for more than two classes of cases, and distinguishing them by the size of the vessel. The words "navigating the said channel of Hell Gate," used in the first part of the section, must, therefore, be considered as intended, at least, to cover any vessel coming within the description repeated in the latter part of the section, that is to say, navigating to or from the port of New York, and from any part of the port, when on a passage through the Gate.

This construction of the act derives support from the consideration, that a more narrow construction of the statute would have the effect to prevent pilots from tendering their services to vessels until just as they enter the Gate, a result contrary to the general design of pilot laws, which in most cases aim to secure the services of a pilot at the earliest possible time; while, understood as I have here indicated, the tendency of the statute will be to furnish a class of vessels, often short handed, with an extra man competent to give efficient aid in the navigation of a crowded harbor, where great care and watchfulness is required, and this without any additional charge upon the vessel, as the amount of pilotage depends on the tonnage and not on the distance to west of the Gate.

My conclusion, therefore, is, that it is no objection to a recovery in this case, that the libel avers that the vessel was, at the time of the tender, in the North river, off Hoboken, that being a point within the port of New York.

Nor do I attach any weight to the suggestion, that the libel omits to aver that the vessel ever in fact passed through the Gate.

Half pilotage becomes due by reason of a tender made to a vessel at the time supposed by the law to require a pilot. If the vessel at the time of the tender was on a voyage bound through the Gate, a subsequent change of voyage, or failure for any reason to attempt to pass the Gate, can have no effect upon the right of the pilot, which became fixed by the refusal of his services.

But I am of the opinion, that in order to recover in this action, it must appear on the face of the libel that, at the time of the tender and refusal, the vessel was engaged in the prosecution of a voyage which would carry her through the Gate. Until such a voyage has begun, the master is not called on to meet the question of the employment of a pilot; but, when he has entered upon such a voyage, and is bound from the port of New York through the Gate, then the law presumes him to be in need of a pilot, and compels him to take the first pilot who offers or pay him half pilotage. The present libel is defective, therefore, in that it fails to show that at the time of the tender the vessel had entered upon her voyage. If the vessel in question, when boarded, was lying at anchor off Hoboken, preparatory to commencing a voyage, and the statement in the libel is consistent with such a state of facts, in my opinion, the libellant cannot recover. The libel must be reformed in this particular before a recovery can be had.

The exception is, therefore, allowed, with liberty to amend the libel, the costs of the claimant upon the present hearing to abide the event.

———

TRAVELERS' INS. CO. (BAYLESS v.). See Case No. 1,138.

TRAVELERS' INS. CO. (McCARTHY v.). See Case No. 8,682.

———

## Case No. 14,148.

TRAVERS v. APPLER.

[2 Cranch, C. C. 234.] [1]

Circuit Court, District of Columbia. April Term, 1821.

EVIDENCE—TALLIES—NOTICE TO PRODUCE.

A baker, using tallies with his customers for the purpose of keeping an account of the number of loaves of bread delivered, may call upon the defendant to produce his counterpart, if a proper foundation be laid for such a call, by affidavit of the plaintiff that such tallies were kept with the defendant, and that he had a counterpart; and if the defendant will not produce it, and will not make oath that he had it not, the plaintiff may produce his counterpart in evidence to the jury.

Assumpsit for bread sold and delivered. The plaintiff had given notice to the defendant to produce the counterpart of his tallies.

THE COURT was of opinion that if the plaintiff would lay a foundation for his call upon the defendant, by affidavit that such tallies were kept by the defendant, and if the defendant would not produce them, nor make oath that he had not such tallies, the plaintiff might produce them in evidence.

———

TRAVERS (BANK OF DANVILLE v.). See Case No. 886.

———

## Case No. 14,149.

TRAVERS v. BELL et al.

[2 Cranch, C. C. 160.] [1]

Circuit Court, District of Columbia. Dec. Term, 1818.

DEPOSITION—NOTICE OF TAKING—CERTIFICATE—OMISSION—PROOF.

If the magistrate who takes a deposition under the act of congress omits to state whether notice

[1] [Reported by Hon. William Cranch, Chief Judge.]

was given to the defendants, it is competent for the party who offers it in evidence to prove that the other party lived more than 100 miles from the place of caption, and had no agent or attorney within 100 miles, etc.

The plaintiff offered to read in evidence, at the trial, a deposition taken under the act of congress.

Mr. Jones, for defendants, objected that the judge who took the deposition had not stated whether any notice had been given to the defendants, although he had stated that the place of caption was more than .100 miles from the place of trial.

THE COURT (THRUSTON, Circuit Judge, absent), overruled the objection, and said that the plaintiff might prove that the defendants lived more than 100 miles from the place of caption, and had no agent or attorney within 100 miles, etc.

---

## Case No. 14,150.

### TRAVERS v. DYER.

[16 Blatchf. 178.] 1

Circuit Court, D. Vermont. April 15. 1879.

ACCOUNT—NECESSARY AVERMENTS—ACCOUNTING—BALANCE DUE.

1. On a general demurrer to a count in an action of account, the question is, whether the count is sufficient in substance, without regard to form, but sufficient must be alleged in some form to constitute a cause of action.

2. In the action of account there are two judgments—one, that the defendant account with the plaintiff; the other, after the accounting, for the balance found due.

3. The declaration must show the privity by which the plaintiff is entitled to an account, and, also, proceedings under or pursuant to it, raising a balance in his favor, to be recovered.

4. Counts *held* bad, for want of such averments.

. [This was an action by William R. Travers against John M. Dyer. Heard on demurrer.]

Edward J. Phelps and Noble & Smith, for plaintiff.

E. R. Hard and Stewart & Eldridge, for defendant.

WHEELER, District Judge. This is an action of account, in six counts. The first count is against the defendant as bailiff to the plaintiff of six thousand cords of wood; the second, as receiver of moneys of the plaintiff, to merchandise with, for their common profit; the third, as receiver of the moneys of the plaintiff as partner in hotel keeping; the fourth, as bailiff of the plaintiff's moiety of land held by them as tenants in common; the fifth, as bailiff of a moiety of other premises; the sixth, as bailiff of a moiety of other premises. The defendant has demurred generally to each of all the counts but the fourth, and tendered several issues upon that to the country. The cause has now been heard upon the

1 [Reported by Hon. Samuel Blatchford. Circuit Judge, and here reprinted by permission.]

demurrer. As the demurrer is general only, the questions are, whether the several counts demurred to are sufficient in substance, without regard to form; still, sufficient must be alleged, in some form, to constitute a cause of action. A general demurrer supplies nothing toward that.

The action of account is somewhat peculiar in its proceedings, but the peculiarities will supply no lack of statement of a cause of action, as those in the action of book account, in the states of Vermont and Connecticut, do, to some extent. The action is for an account by the defendant to the plaintiff for money of the plaintiff received by the defendant by some privity of authority or appointment, or of estate, or of law; and for the recovery of the balance due. There are two judgments in the action—one, that the defendant do account with the plaintiff; the other, after the accounting, for the balance found due. The plaintiff, in his declaration, must set forth enough to entitle him to both judgments. The privity, by which he is entitled to an account, and proceedings under or pursuant to it, raising a balance in his favor to be recovered, must both appear. If a plaintiff has not these he is not entitled to maintain the action. If he has them but does not set them forth, he does not show himself entitled to maintain it. These are simple and just rules, by which these counts must be tested.

The first count sets forth the relation between the parties clearly enough, by alleging that the defendant, from one day to another named, was bailiff to the plaintiff, and during that time had the care and administration of the wood to be sold and made profit of, for the plaintiff; but that is as far as it goes, except that it states that the defendant has not rendered any account, though requested. There is no allegation that any wood has been sold or profit made, nor anything to show there has been anything of the plaintiff's in the hands of the defendant, but the wood, and that may all be there yet, ready for the plaintiff. This count seems to be clearly bad.

The second count sets forth, that the defendant was the receiver of moneys of the plaintiff from a day to a day named, however and by whatever contract accruing for the common use, benefit and profit of both, and during that time received ten thousand dollars, to merchandise with and make profits for both, to render a reasonable account thereof, but states no relation or privity under which the plaintiff so became the receiver, nor that he did merchandise with the money received, or did make any profit. In Co. Litt. 172, it is said, that, "if two joynt merchants occupy their stocke, goods and merchandizes in common, to their common profit, one of them naming himselfe a merchant shall have an account against the other naming him a merchant," &c.: but here that is